UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

TANISH KUMAR, Petitioner,

v. Civil Action No. 4:26-cv-556-DJH

MIKE LEWIS, Jailer, Hopkins County Jail et al., Respondents.

* * * * *

**MEMORANDUM AND ORDER**

Petitioner Tanish Kumar, a noncitizen currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending his removal proceedings. Kumar alleges that his detention violates the Due Process Clause of the Fifth Amendment. (Docket No. 1) The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 4), and they have submitted briefing setting out their respective legal arguments (D.N. 6; D.N. 7). After careful consideration, the Court will grant Kumar's petition for the reasons explained below.

**I.**

Kumar is a native and citizen of India. (D.N. 1, PageID.36 ¶ 29; *see* D.N. 6-1, PageID.57) He entered the United States on December 19, 2021, on an F1 student visa. (D.N. 1, PageID.36 ¶¶ 29–30; *see* D.N. 1-1, PageID.18; D.N. 6-1, PageID.58) Kumar was also issued an employment authorization card. (*See* D.N. 1, PageID.37 ¶ 33; D.N. 1-2, PageID.19) Within one year of his entry, Kumar filed an asylum application (D.N. 1, PageID.37 ¶¶ 31–32; *see* D.N. 6-1, PageID.58) and "discontinued his schooling" (D.N. 1, PageID.37 ¶ 32). On March 5, 2022, the Department of State terminated Kumar's student-visa status. (*See* D.N. 6-1, PageID.58) On July 30, 2026, Kumar "was the subject of a traffic stop" by Indiana State Police (ISP). (D.N. 1, PageID.37 ¶ 34; *see* D.N. 6-1, PageID.58) ISP arrested Kumar and then transferred him to the

custody of the Department of Homeland Security (DHS) pursuant to an administrative warrant. (D.N. 1, PageID.37 ¶ 34; *see* D.N. 6-1, PageID.58) On July 31, 2026, Kumar was placed in removal proceedings via a Notice to Appear, which designated him as an "alien present in the United States who has not been admitted or paroled." (*See* D.N. 1-4, PageID.21) Since his arrest, Kumar has not received a bond hearing. (D.N. 7, PageID.60–61; *see* D.N. 1, PageID.32 ¶ 7)

Kumar seeks a writ of habeas corpus against Hopkins County Jailer Mike Lewis; Attorney General Todd Blanche; DHS Secretary Markwayne Mullin; and Acting Director of Immigration and Customs Enforcement (ICE) David Venturella. (D.N. 1, PageID.34–35 ¶¶ 19–22) Kumar alleges that his detention violates due process under the Fifth Amendment. (*Id.*, PageID.38–45 ¶¶ 42–81) He asks the Court to order his immediate release. (*See id.*, PageID.45) Respondents argue that (1) Kumar has not been "deprived of any due process right" because he has not requested custody redetermination under 8 U.S.C. § 1226(a) and (2) Kumar should be required to exhaust administrative remedies by filing a motion for custody redetermination to receive a bond hearing. (*See* D.N. 6, PageID.52–55)

**II.**

**A. Exhaustion of Remedies**

Respondents argue that Kumar should be required to exhaust administrative remedies by seeking custody redetermination under § 1226(a). (*See id.*, PageID.53–55) Kumar maintains that "a § 1226(a) custody redetermination under 8 C.F.R. § 1236.1(d)[] is constitutionally inadequate . . . because it forces the detainee to prove he is not a danger or flight risk, the precise burden-allocation that courts in th[e] [Sixth] Circuit have repeatedly held violates due process." (D.N. 7, PageID.60–61)

Because "there is no applicable statute or rule that mandates administrative exhaustion" here, the Court may exercise its discretion as to whether exhaustion should be required. *Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 619 (W.D. Mich. 2026) (citing *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013)). District courts in the Sixth Circuit apply the three-factor test set out in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), in deciding whether to require exhaustion. *See Soto-Medina*, 817 F. Supp. 3d at 619. Under that test, a court may require exhaustion when

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* at 619–20 (citing *Cal. Care Corp.*, 709 F.2d at 1248). Here, whether Kumar's detention without a bond hearing violates due process is "principally a legal question" that does not require agency consideration. *Id.* at 620. Second, waiving exhaustion would not encourage the deliberate bypass of administrative review because Kumar's petition raises constitutional claims (*see* D.N. 1, PageID.38–45 ¶¶ 42–81; D.N. 7, PageID.60–61). And "the BIA cannot review constitutional challenges." *Soto-Medina*, 817 F. Supp. 3d at 620 (citing *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006)). For the same reason, administrative review would not preclude the need for judicial review under the third *California Care Corp.* factor. *See id.* Accordingly, the Court will waive exhaustion and consider Kumar's petition. *See Chavez v. Bullock*, No. 2:26-cv-03081-SHL-cgc, 2026 WL 3017043, at *1 (W.D. Tenn. Oct. 7, 2026) (waiving exhaustion where respondent argued that "[p]etitioner should be required to first request a bond hearing in immigration court before seeking habeas relief in federal court").

**B. Due Process**

Because Kumar "is detained under 8 U.S.C. § 1226(a)" (D.N. 6, PageID.52), he is entitled to a bond hearing. *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 732–34 (6th Cir. 2026). Kumar asserts that "due process required DHS to demonstrate" before detaining him "that he . . . poses a flight risk or danger to the community." (D.N. 1, PageID.39 ¶ 51) Respondents argue that because "[Kumar] has available to him the right to seek custody redetermination . . . [and] simply hasn't sought the relief available to him," he has not been "deprived of any due process right." (D.N. 6, PageID.52) District courts within the Sixth Circuit have repeatedly rejected Respondents' argument. *See, e.g.*, *Perdomo Amaya v. Bullock*, No. 3:26-cv-01341, 2026 WL 2873809, at *2 (M.D. Tenn. Sep. 24, 2026) ("[T]he Government appears to argue that the Petitioner need not be released because he has not requested a bond hearing. That argument is without merit." (emphasis omitted)); *id.* ("[T]he government is . . . well aware that this court has rejected the argument that a[] [noncitizen] detained by the government must request a bond hearing before one is provided."); *Chavez*, 2026 WL 3017043, at *1–2 (granting habeas petition where respondent argued that "[p]etitioner should be required to first request a bond hearing in immigration court before seeking habeas relief in federal court"); *cf. Lin v. Woosley*, No. 4:26-CV-278-CHB, 2026 WL 1283236, at *6 n.6 (W.D. Ky. May 11, 2026) (ordering immediate release as a remedy even though respondents argued that § 1226 "provides for detention until a bond proceeding is adjudicated").

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings. *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted). To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

*Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8 (W.D. Ky. Nov. 4, 2025) (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)). Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Kumar "has a significant private interest in not being detained." *Id.*; *see Quintero v. Olson*, No. 4:26-cv-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026); *Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *6 (W.D. Ky. Nov. 26, 2025); *Alonso*, 2025 WL 3083920, at *9. Moreover, "the risk of erroneously depriving [Kumar] of his freedom is high if the [immigration judge] fails to assess his risk of flight and dangerousness." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025); *see* 8 C.F.R. § 1236.1(c)(8), (d)(1); *Jaimes v. King*, No. 2:26-cv-11327, 2026 WL 2030810, at *7 (E.D. Mich. July 14, 2026) ("Requiring a detainee to prove his own non-dangerousness and non-flight risk abounds with risks of erroneous deprivation.").

Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that DHS can readily follow here." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 493–94 (E.D.N.Y. 2025). Thus, because all three *Mathews* factors weigh in

Kumar's favor, the Court concludes that his detention violates due process.[1] *See Quintero*, 2026 WL 596643, at *3; *Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7; *see also Perdomo Amaya*, 2026 WL 2873809, at *2 (holding that the "Petitioner's detention violated his due process rights" even though "the Government . . . argue[d] that the Petitioner need not be released because he has not requested a bond hearing" (emphasis omitted)). And because Kumar is unlawfully detained, the Court will order his immediate release. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention." (emphasis omitted)); *Perdomo Amaya*, 2026 WL 2873809, at *2 (ordering immediate release); *Singh*, 2025 WL 3298080, at *6 (same).

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

[1] "Having determined that the Petitioner's procedural due process rights were violated and that he is entitled to a writ of habeas corpus on that basis, the [C]ourt does not address his other arguments that his substantive due process rights were violated." *Perdomo Amaya*, 2026 WL 2873809, at *2.

**ORDERED** as follows:

(1) Kumar's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Kumar, and, in the event he is arrested and re-detained, provide him with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a).[2] Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **October 21, 2026**.

(2) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

October 19, 2026

**David J. Hale, Chief Judge**
**United States District Court**

[2] In any such hearing, "the government will have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence." *Halstead v. Putra*, No. 1:26-cv-2591, 2026 WL 3002481, at *2 (W.D. Mich. Oct. 6, 2026); *see also Singh v. Hott*, No. 4:26-cv-256-DJH, 2026 WL 1880217, at *5 (W.D. Ky. June 30, 2026) (citing *Soto-Medina*, 817 F. Supp. 3d at 627–29 (discussing cases)).